related cases. The first one is number 24-13658 Ronald King et al. v. UA Local 91 et al. Mr. Wiggins. Please accord. I'm Bob Wiggins from Birmingham. I represent the plaintiffs. The first issue we address is how this case became yet another one that is trapped by McDonnell-Douglas. The court was essentially addicted to McDonnell-Douglas. They did not follow the Supreme Court's decision in Ames which says you shall not add extra elements to McDonnell-Douglas that are fixed, inflexible, highly specific. When they added this element of you have to be on the referral sheet, they added an element that we can never satisfy because it doesn't exist. There is no such rule. There is no such practice. What are you referring to when you say it doesn't exist? What is the it? The referral system works off of the out-of-work list. You get selected off the out-of-work list, not the referral sheet. The referral sheet is simply the residue or the record of the decision made on the out-of-work list. So to say that we have to be on the same referral sheet as a white person that got the job, we can never do that because they got the job before that. They got the job off the out-of-work list and it's a done deal. We can't, we have no chance. There's no new decision made at the referral sheet stage. So I think this is exactly the time. Can I just try to help, try to get you to help me understand part of the record? Because you obviously, you and the other lawyers know it better than we do. With regards to the foreman positions, the complaint alleges, and you presented some evidence at summary judgment, that your clients, the black employees, for lack of a better term, were eligible and competent to be foremen, right? Yes. Okay. The complaint doesn't allege, and I'm not saying it needs to, but the complaint doesn't allege that when they were not chosen, white individuals were chosen for the foreman positions, right? No, it does allege that. It does allege that? That for every... I'm sorry. No, no, it's okay. We're just, I'm just trying to understand. So does the complaint allege a one-for-one match? Like every time a black employee, employee for lack of a better term because they're trying to become employees, but every time a black employee was not chosen as a foreman, a white comparator was chosen as a foreman. Does the complaint allege that? That one-to-one, like for every one who was denied, a white person was granted the foreman position? Yes. The complaint alleges that? Yes. When you come back on rebuttal, if you could just look through and tell me where you think the complaint alleges that? And also the judge found that. The judge found what? Found that they were on the out-of-work list, they were bypassed, and they were, you have what's called the first in, when they're first at the top of the handwritten list, they get the job. The black moves up behind them, they're first now, they don't get the job. That's what, you know. And you're saying the complaint alleges that and the district court found that? The question was raised as to whether we pled on the motion to dismiss. Did we plead the out-of-work list and show the out-of-work list? And the judge said we didn't say it explicitly, but she found it inferentially in the complaint. And that was where your guys actually went to work, right? She said, well, if they went to work, I can assume they were on the list. Is that right? Do I have that right? Yes. That's how she got there inferentially? Yes. Okay, good. Keep going. Sorry. Yeah. And then when we got a chance to have some evidence, we put the evidence in of the actual out-of-work list, showed they were at the top, they didn't get picked, Mike got picked, and that the system worked the way we described it. And there is no rule or practice or possibility of getting the job off the referral list. But yet that was made a precondition to a McDonnell Douglas case. Tell me just in practice, how does the out-of-work list operate with regards to supervisory foreman positions? I think I understand how it works generally for run-of-the-mill positions, a welder, a pipe fitter, et cetera. First in, first up, so you're at the top of the list. You're the one who's been out of work for the longest time. You signed up first. You should be the first one presumably to be taken off the list and hired. So how does that operate with regards to supervisory positions? How do you think it's supposed to operate and how do you think it actually operates? It operates the same way as any other job. When you're out of work, you go down, you sign up on the list, and then you move up sequentially by date of signing or moment of signing. And when you get to the top, if they've got a request from the company for a foreman position, they take it off the top of the list. So I'm sorry to interrupt, but I think you're helping me understand this. So when you sign up and you go down to the union hall, when you sign up, you sign up with a position listed? So instead of saying pipe fitter, welder, you say foreman? No, you do not. That comes off the foreman list. I'm sorry. I said it wrong. It comes off the journeyman list. There's not a foreman list. The foreman come off the same list as all the other jobs. But how do they know you're seeking to be a foreman? I'm just trying to understand the basics. They call you and offer the job to you. No, no, but when you – okay. I've never been a member of a union, so you've got to help me.  Okay, I'll give you extra time. I'll give the other side extra time too. You go to the union hall. Right. You're out of work. Correct. And you want to sign up on the list. Yes. On that list, does the union know automatically, intrinsically from your union card and your union number what job you do? Or you have to say, I'm a pipe fitter. I'm a welder. I'm an X. I'm a Y. Or I'm a foreperson. I'm a supervisor. How does that work? Or you just put your name there, and then they call you because you're first, and they say they want a pipe fitter. And you say, I'm a welder. And they go, okay, we'll go to the next one on the list. How does that work? Well, if you have a welder list and you have a journeyman pipe fitter list, and if they call for a welder – So they're different lists by occupation. Yes. Okay. I understand. I thought there was a master list at which you listed the occupation. But you're saying there's one for every profession. Yes. If you're a journeyman pipe fitter, you sign up on the pipe fitter list. If you're a journeyman welder, you sign up on the welder list. Makes sense. I understand now. So one piece that I think I'm missing, how do the workers indicate that they want to be a foreman? Everybody's eligible to be a foreman. Everybody's considered equally qualified to be a foreman because the main qualification is being a journeyman. And you don't sign up unless you're a journeyman. So when you hit the top of the list, if the company's requested a foreman position, you get called and you get offered the job. That's what the contract says. That's the practice that's followed for the white employees. But it was not being followed for the black employees. Okay. All right. We interrupted you to try to get some understanding of how these lists work. So you were starting to explain why, in your view, the district court made an error with respect to its application of McDonnell Douglas. The fourth prong of McDonnell Douglas is that the position remained open and they continued to seek applicants. She took that out and put in this as a substitute, that you must be on the referral sheet, the same referral sheet, as a white person who got a foreman job. Well, the only way to be on that referral sheet is not to be on it as a foreman. You've already been rejected. You got rejected back at the out-of-work list stage. It's a two-stage process. And the injury occurs at the first stage, the out-of-work list stage, because that's where the first-in, first-out rule applies. Now, they have two other methods of getting these jobs. One's called a call-by-name. That is, the company calls for you by name. They want you for that job. You don't get it automatically just because the company calls you. You still have to be reachable on the out-of-work list by the date you signed it. They have a second method. I guess it's a third method. It's called step-up. At the end of the process, the call-by-name is at the front of the process. The step-up is at the end of the process when the union does not refer someone. They hold the vacancy. They've been asked to send one. They hold it. They don't fill it. That's another way my clients lost their opportunities. Valerie, can you give him five minutes, please? Thank you. So I've given you five extra minutes because we took you off on a tangent to explain some things to us. Well, yeah, I appreciate that, Your Honor. But this method I was describing, at the end of the process, you can be stepped up if the union has not filled a request for a form of position. Tell me where the discrimination, in your view, occurred with regards to the union. With regard to what? The union. The people you're suing. Yeah. I couldn't hear you. It occurs at each of those three stages. When the company calls by name, you haven't had a chance to apply for that because that's pre-out-of-work list. But the company and the union do not post those jobs. You don't know they're occurring. You don't know they're going to request somebody by name. It's an invisible process. So you're sitting there, number one on the list, thinking you're next, and all of a sudden someone else gets the job through this call-by-name process. The second way is the one I've already described, by which you can be the highest ranked, not get the job. You cannot get the job when someone is given it who's not even ranked. They're not even on the out-of-work list. And you can lose your opportunity when a traveler steps in front of you. A traveler is someone from another jurisdiction, union jurisdiction. They're not a member of the local union. And you can lose your opportunity by the step-up process that I described. Right. So let's take all of that as a given. Where is the inference of racial discrimination? In other words, does that, what you just described, does that happen to both black journeymen and white journeymen? Or only to black journeymen or predominantly to black journeymen? And what's the evidence on that score? We presented 85 different out-of-work lists, which these five men were the highest ranked, next in line, and they were bypassed by a lower ranked person or a person that wasn't even on the rank, that wasn't even on the out-of-work list, or by a traveler. Eighty-five times that happened in just two or three years. They did not present a witness, a decision maker, to say why. There's nothing in this record that tells you a non-racial reason. And that's essential. If you're going to follow McDonnell Douglas, at least you ought to follow all of it. Now, our main point, though, is we're not supposed to be following slavishly McDonnell Douglas. This case is not a McDonnell Douglas case. I mean, it's just slightly a McDonnell Douglas case. It was forced on us. So did you – you're right that we're not supposed to apply McDonnell Douglas mechanically or slavishly, as you said. How did you try to present your claim of discrimination through the so-called mosaic or through some other methodology, totality of the circumstances? Like what did you tell the district court the analytical model was? We're presenting the evidence as a whole, the facts as a whole. The judge then wanted to do the McDonnell Douglas, so we had to comply. So we tried to fit within McDonnell Douglas. And then basically we got sort of in trouble for filing what she called a shotgun pleading. It was only shotgun because we weren't trying to fit within the confines of McDonnell Douglas. We were trying to present a different kind of case. It's the kind of case that this court in the first 10 years of Title VII spent a lot of time developing on how to apply these collective bargaining agreements. When you have essentially a three-legged stool, you have the company, you have the international union, you have the local union. How do you apply these collective bargaining agreements? There was no McDonnell Douglas at that time. We didn't have the problem we have now where everybody was trying to force fit every case into that model. Can I ask you a quick question? Have you raised in your brief to us the issue that the district court erred in failing to view this as a convincing Mosaic case or under some other superstructure than McDonnell Douglas? You certainly have raised an argument that the district court misapplied McDonnell Douglas, but have you raised in your brief to us as an argument the fact that the district court applied McDonnell Douglas to the exclusion of other superstructures? Yes, and the judge, on the summary judgment, the judge applied the Mosaic method too, but she restricted it the same way. She put this artificial rule that you've got to be on that referral sheet with the white person that got the job, and she said, so we lose. We get summary judgment because we don't, for neither the Mosaic or for the McDonnell Douglas, we aren't able to prove that impossible to prove point. All right. Thank you, Mr. Wiggins. You've saved your five minutes for rebuttal. Mr. Gilman. Thank you, Your Honor. May it please the Court. I'm Michael Gilman representing the United Association, the international union in this case. I'll call it the UA or the international. The UA incorporated the local unions brief on appeal, so I'm prepared to address any of the issues that are in either of those briefs, but I'm going to reserve five minutes for the local unions council to argue as well. So the district court correctly determined that on the basis of the undisputed facts before it that the defendants were entitled to summary judgment as a matter of law. They didn't show a disparate impact that were connected to any referral practices of the union, and they failed to show a convincing Mosaic of actionable race discrimination. They failed to show that the UA as the international union instigated, supported, ratified, or encouraged any of the alleged discriminatory conduct. So summary judgment could be affirmed on either ground with respect to the UA. Mr. Wiggins says that there was evidence of a practice of bypassing black journeymen who were at the top of the out-of-work list with no explanation about why that was so. First, is he right about the first point? With respect to the there was no response? No, no. The first one, sorry, I should have asked the question in a better way. He says that there was evidence on the plaintiff's side that a number of black journeymen who were at the top of the out-of-work lists were bypassed for people lower on the list with no explanation for why that was so. So my first question is, is he correct about that aspect of the record? I mean, no, I wouldn't concede that there were, I guess I can, what I can say is that there, the record evidence would show that the first person who was next up on the list did not always get referred to a job. But he says a significant number of those were black journeymen. So I don't believe that there's competent statistical evidence that would show that. He presented some anecdotes from his own clients that were showing that. He says there were 85 lists in which this occurred. There are, yes, I believe he's identified 85 instances. But it's not accurate to say that there's nothing in the record to contradict those. There's answers to the interrogatories that were filed by the local union that addressed, I believe, each and every single one of those instances. And provided reasons for every one of them? I believe. I'm not sure if it's every one of them, but there's definitely record evidence to contradict or explain, you know, why that happened. And one of the things that you heard Mr. Wiggins say was some of the ways that these individuals are selected into form and positions are when the company exercises their management right to just say whoever they want to be the foreman. They can pick up the phone and call the union hall and say, I want, you know, whoever to be the foreman. And the union is required to comply with that request. And on many of those, for example, many of those 85 instances, that was the exact scenario that happened. So he can kind of throw around the 85 number, but the truth is, is that the union has, you know, all of those instances cannot be explained the way that Mr. Wiggins explained them, which is, well, my clients just got passed over on the list. For example, there's the call by name. Also part of the referral rules that are at issue here mandate that you have to be unemployed in order to be referred. So in several of those instances as well, the plaintiffs themselves were not available to be referred to those jobs in question. They may have been, you know, working in some other jurisdiction that would have prevented them from being referred to that job. But the point is as far as when did the plaintiffs raise this, which I think is the crucial issue to understand is that, yeah, they raised this on summary judgment, but the court had already determined correctly that they hadn't pled these factual scenarios. They hadn't, in their complaint, they didn't plead that I was passed over on the out-of-work list, and that's why I didn't get form and referrals, or at least they didn't sufficiently plausibly plead those allegations. So that's why the judge at summary judgment said these aren't part of the case, because when then Judge Boudry was reviewing the allegations of the complaint under, you know, the standards expressed by the Supreme Court in Iqbal and Twombly, she was determining which of the allegations or which of the, yeah, which of the allegations had been plausibly pled. And so it wasn't that she was using McDonnell Douglas as a stricture to determine what would need to be pled at the motion to dismiss stage. In fact, she recognizes that she was not requiring the plaintiffs to plead or prove a prima facie case under McDonnell Douglas at the motion to dismiss stage. What she was doing was what she's required to do when reviewing a complaint, is going through the allegations and seeing what had been plausibly pled. And Judge Newsom, you brought up exactly what she did at that stage. Nowhere in the complaint did they claim that they were being passed over on the out-of-work list. It's not mentioned. There's no mention of a first-in, first-out process at all. What the judge did was cut the plaintiffs a break. She said, even though you didn't mention this at all, I'm going to assume that if you got referred to the job in the first place, you must have been otherwise eligible to be referred under the referral rules. Well, what, okay, so under your perspective and maybe what Judge Boudry concluded, what were the allegations of discrimination in the complaint? Not that you agree with them or not or you think they're plausible or not, but what were the alleged, what did the alleged discrimination consist of as framed in the complaint? So if you look at the complaint and just said, okay, tell me what the claim is based on, what is it? So what she found was that the only plausible allegations in the complaint of discrimination were that the plaintiffs were referred to a job alongside other white journeymen. And instead of picking the plaintiffs to be the foreman, or I should say, instead of recommending that the plaintiffs be a foreman, the union chose a white member instead. And the complaint listed, you know, 50 or so white members where this had allegedly happened. And that's what the district court said. What is the difference between referral and the out-of-work list? Is there a difference between the two, temporarily or otherwise, or not? They're one and the same. I think they're part of the same concept, right? So Mr. Wiggins, I think for the most part, did a good job explaining what the process is In order to fill a manpower request that comes in from a contractor, the local union will consult the out-of-work list and determine, you know, who's next up to be referred to that job. So the referral postdates the out-of-work list. So the out-of-work list exists, the union looks at it, has a request from an employer, and then makes a referral based on the out-of-work list. That's correct.  Unless there's, in a foreman situation, a request for a specific person.  Okay. And then, but, you know, that's true that there's sort of a two-step process. And the plaintiff has made this case that, well, you know, you're not being fair here because you're excluding that first step in the process, right? And they cite to the Supreme Court's decision in Connecticut v. Teal, that, you know, you can't just look at the bottom line, you have to look at each step in the process. The problem for the plaintiff is they didn't plead that they were being passed over on that first step process, not plausibly. That's what the judge determined. That's not an issue at all in Connecticut v. Teal, where the plaintiff in that case made the whole case about, you know, a discriminatory, you know, testing procedure. So it's not about adding elements to McDonnell Douglas or using it as a stricture or anything like that. It's a straightforward application of Iqbal and Twombly, where the judge said, I'm going to look at this fourth complaint, you know, two of which were previously dismissed as shotgun complaints, and I'm going to look and see what has the plaintiff actually plausibly pled. And she identified only those instances where the plaintiffs were also referred to the job, but they weren't picked as foremen by the union. I just have a clarifying question before you say— Can you give him three more minutes, please, Valerie? Thank you. And I may have misunderstood, but it sounded to me like Mr. Wiggins is suggesting that the district court judge mixed up the referral list and the out-of-work list. Is that correct? And if so, does that matter? I think that he's saying that she overlooked this fact that the out-of-work list is the first step. But we can hardly blame Judge Baldry because that wasn't pled in the complaint. And so, you know, it's not a matter of the judge ignoring this aspect of the case. It wasn't part of the complaint to begin with. So she was taking the complaint as written and said, here's what's plausible based on that. And the plaintiffs got a copy of that order and could have amended their complaint if they said, well, wait a second, no, no, no, no, no, you've got it wrong, Judge. I have all these other types of discrimination that I'm claiming are at issue here, and they could have filed another amended complaint. They had, I think, an additional month and a half or two months after the judge issued her order on motion to dismiss before the deadline to complete the amended pleading. So if they had wanted to bring a different case, you know, they certainly could have done so and made all the allegations that they're making now, right? Which is, no, really the way that this works is that the union has an established first-in, first-out system, and there's an out-of-work list. And the reason my clients were harmed was because they were bypassed on that first-in, first-out system, and they never got a chance to be on the referrals in the first place. They could have made all those allegations in, you know, another complaint. And, you know, from the international union's perspective, by the way, if they had made those allegations, you know, we would have been on a lot firmer ground to get dismissed out of the case in the first instance because what we would have said is, you know, if you want to use this collective bargaining agreement to tie us to as having incorporated the local union's referral policies, what we would have said, and what we're saying now at summary judgment, is to the extent we incorporated or can be blamed on anything, it's the fact that we, you know, gave our blessing to a set of rules that said you have to refer people on a first-in, first-out basis, and you can't discriminate based on race. That's what the union's referrals that we incorporated into the collective bargaining agreement issue say, right? And that distinguishes this case from all of the other cases that are finding an international union liable for discrimination allegedly committed by their local union. In each of those cases, the policy at issue, the operation of the policy at issue, or I should say the intended operation of the policy at issue resulted in discrimination, even if discrimination wasn't the intended result, right? So if you have the example of a discriminatory, a facially neutral seniority policy that is discriminatory in effect because it is a holdover from, you know, explicit segregation in the trades, the courts have said, you know, in those circumstances, you know, maybe there is a sufficient connection to a discriminatory practice sufficient to put the international union on the hook, but we're not aware of any cases where the international is found liable for a deviation from what the policy that they were aware of was implemented. And I think that's the only, that distinction is very important for carbon fuel, the case that would control international liability in these circumstances. All right. Thank you very much. Mr. Lucey. Mr. Conner. Glenn Conner, judge for UA91. I'd like to touch base very briefly on a couple of the issues that Mr. Wiggins discussed and that Mr. Gilman followed up with is regarding the way that the out-of-work list works. I think it's important to note in the first place, Mr. Gilman referred to a couple of the exceptions to the out-of-work list, and it's very important to realize that we don't have a foreman, we do not, there is not a foreman out-of-work list because the local doesn't have any rights or obligations to refer a foreman. The appointment of a foreman is specifically and uniquely the responsibility of the employer. That is set out in the collective bargaining agreement and it is set out in the hiring hall referral rule policies. Okay, but help me factually. So an employer wants a foreman in welding. How does the employer go about communicating that to the union? He doesn't. He points somebody on his staff as the foreman. He looks around his shop. No, no, wait, wait, wait. Now I'm completely confused. Yes, sir. Because I thought that at least in some cases the request for a foreman was communicated to the union. It is, Judge. There are occasions. It does happen. Okay, tell me how this works then because now I'm completely confused. I mean I know that an employer can look among its own staff and say, oh, I need a foreman. I'm going to choose you or I'm going to open up for bidding and you can apply and all that. But there are times, I thought this whole case was based on the times when the employer made a request to the union for foreman. Well, Judge, that's what we tried to limit it to. That's what our position was. That was what we said was pled was. But that's not what Mr. Wiggins just told you. He told you just a minute ago, he says this case is about step-ups. He didn't say that. You're not being fair to him. He said there's another method called step-ups. Yes, sir. He didn't build his whole theory on step-ups, whatever that theory may be. If that's what he's saying, then I need to go back at square one and read everything all over again because I have no idea what this case is about. Well, Judge, that was the subject of the judgment for a motion on the pleadings. And that was part of the limitation. That was not – it was very specifically a part of the motion of the briefing and the Judge Bowdery's order and the motion for judgment on the pleadings. I'm a little confused about the motion for judgment on the pleadings because I thought you were saying these claims aren't even in the case because they're not in the complaint. So how does the judgment on the pleadings? Because they were – because, well, Judge, because as we started discovery, Judge, when the motion for judgment, we filed a motion to dismiss the third amended complaint. When the Judge – when Judge Bowdery issued that third amended complaint, she was looking at the fourth incarnation of their complaint. We moved to dismiss it on shotgun pleading grounds. She decided that it wasn't a shotgun pleading. But what she did do is she went through and she very carefully parsed it and pulled out of that pleading a couple of instances where she could infer that they had plausibly pled facts that supported a cause of action. And that related to a very narrow situation, and that is where two things occurred. Number one, that the plaintiffs had been referred to a job by the union and to which there was also a foreman referral made. That was the narrow universe that she said this is the plausible facts that are pled in this third amended complaint. As we progressed into discovery, it quickly became evident that there was a dispute between the parties about exactly what that meant. One of the allegations that kept coming up was that when the employer – the easiest one given our discussion is that when we would refer people to the employer and then the employer would choose from among them, Mr. Wiggins was – I'm sorry, the plaintiffs were saying that that was a racially discriminatory action on the union and attributing that to us. With the motion for judgment on the pleadings, you were trying to limit the case to what was in the complaint. We're trying to limit it to what was in the complaint and to what Judge Jordan just described. That's what we were trying to limit it to because they – I'm sorry, I derailed that discussion. I don't know if you – okay. Well, it's important. They're related because the 85 people on the out-of-work list, that came up in the response to our motion for summary judgment. That's not what was pled in the third amendment complaint, and that's not what was discussed at the motion for judgment on the pleadings. Okay, same question that I asked. I'm almost afraid to ask it, but I'll go ahead and do it anyways. What was the theory of discrimination in the operative complaint? Nepotism, that we engaged in nepotism, that we had word-of-mouth referrals, and that we required prior leadership that they couldn't have acquired because they weren't because of the historical racism. With regard to foreman referrals or with regards to all sorts of journeyman jobs? Only foreman, Judge. This case is only about foreman referrals. And the claim was that because you allegedly engaged in those three things, that was a proxy for racial discrimination? Yes, sir. Okay, all right. Okay, thank you very much. Thank you, Judge. I think we omitted something very important. When Mr. Gilman was saying that we didn't amend again, well, of course we didn't because she ruled in our favor. She denied the motion to dismiss. She found our claims plausible. So there was no way for us to file a fourth amendment or a fifth amendment, whatever. The pleadings were over. They were settled. And we proceeded with discovery. So the idea that we could have repled to fit their theory of the case, the judge found our theory of the case to be plausible and denied the motion to dismiss. In doing that, she went carefully, as Mr. Conner said, through the complaint and looked at each item of McDonnell Douglas and said plaintiffs satisfy first one, she got to the fourth one, and she made the substitution that I described earlier, where instead of the position remained open and they continued to look, which is what you do when you bypass someone on an out-of-work list. You don't give it to the highest person. You go down the list and find someone else. And we proved that. That's just the way it works. But she took that out of McDonnell Douglas, and she put in this new criteria that I said, that you don't have to just be bypassed on the out-of-work list. You have to actually be on a referral sheet, which is the end of the process. That's where they send to the company the result of the out-of-work list. John Doe gets the job. They send it to the company on the referral sheet. We're not on the referral sheet. We can't be because the selection process has been over back at the out-of-work list stage. Are Mr. Gilman and Mr. Conner right that there is no foreman out-of-work list? There is. Every out-of-work list can have foreman referrals taken from it and foreman requests filled from it. Yes, but there's no separate foreman list. There's no separate list. Got it. And I think there's confusion going on about the step-up and the call-by name. The 85 list, the vast majority of the bypasses were a lower ranked, a later signed person on the out-of-work list got the job, or a traveler got the job who wasn't even eligible and is not on the out-of-work list, or a member, a local 91 member that's not on the out-of-work list got picked and not stepped up, referred by the union. The step-up is a decision by the company after the referral process, at the end of the referral process, and only if the union held the vacancy back, did not recommend anybody, did not send anybody on a referral sheet over there. Then they can do a step-up. That shouldn't occur if the higher ranked black journeyman was offered the job and he accepted it, but he doesn't get offered the job under this. You have to realize, and there's a lot of them in the record, 85 of them we rely on heavily, and you can see what they are. You hand write, and then when you are no longer out of work, you've gotten a job, you're scratched off. It's not a computer system. It's just an old-fashioned system with pencil and paper. And it's down at the union hall. The plants are out in the country at a steam plant working. They don't see this whole process. It's largely invisible. And once we got hold of the out-of-work list, we saw the bypass going on consistently. It's a breach of the collective bargaining agreement, and we think it proves their case. Now, let me say something about the... Okay, you've run out of time. I'll give you a couple of minutes to wrap up because we have to get to the next case. Yeah, I understand. I'll finish, John. No, it's okay. You can wrap up. I don't want to cut you off. Well, I want to say something about the... I don't want you to go on for 10 minutes either. It was mentioned about the motion for judgment on the pleadings. After the judge found our theory of the case to be plausible, and she denied the motion to dismiss, they came back on this substituted fourth prong of McDonnell and Douglas and said they're not abiding by that. They're questioning witnesses about the other things, the other four ways you can lose your opportunity. It was briefed. We showed that this prong that's been substituted cannot be satisfied because the harm has already occurred. Right. No, we understand that point. You think she incorrectly applied McDonnell-Douglas on the motion for judgment on the pleadings. That was the motion for judgment on the pleading ruling. Now we get to summary judgment. The judge has changed. Judge Browder retired. And she said she rules grant summary judgment because of that ruling, that substitution of that fourth prong. Okay. And she says she won't even look at the rest of our evidence. Okay. We think we understand your argument. We'll certainly look at the briefs and this complicated record. But we need to move on to our final case, the related one, which is number 12.